Filed 3/2/16  P. v. Fountain CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B263890 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. NA099982) |
| LAWRENCE TYRONE FOUNTAIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Arthur Jean, Jr., Judge.  Affirmed.

Tracy L. Emblem, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Lawrence Tyrone Fountain (defendant) appeals from the judgment entered after he was convicted of carrying an unregistered, loaded handgun, second degree robbery, and attempting to dissuade a witness by force or threat. He contends that substantial evidence did not support his conviction of dissuading a witness, and that the trial court was required to stay his sentence as to the dissuasion count under Penal Code section 654.[1] Finding no merit to defendant's contentions, we affirm the judgment.

## BACKGROUND

An amended information charged defendant with the following four felonies: count 1, carrying an unregistered, loaded handgun in violation of section 25850, subdivision (a); count 2, unlawful firearm activity in violation of section 29825, subdivision (a); count 3, second degree robbery in violation of section 211; and count 4, dissuading a witness by force or threat in violation of section 136.1, subdivision (c)(1). The information alleged as to all counts that defendant was out of custody on bail or on his own recognizance at the time of the offenses, within the meaning of section 12022.1. At arraignment, count 3 was amended by interlineation to add the special allegation that a principal was armed with a firearm, within the meaning of section 12022, subdivision (a).

A jury found defendant guilty as charged in counts 1, 3, and 4, and found true the special firearm allegation. On motion of the prosecution, the trial court dismissed count 2 in the interest of justice, and by agreement with the prosecution, defendant admitted the bail allegation in exchange for a prison term in this case of seven years. On March 26, 2015, the trial court sentenced defendant to a seven-year term, comprised of the upper term of five years as to count 3, plus two years for the bail allegation, a concurrent high term of four years as to count 4, and a concurrent two-year term as to count 1. The trial court stayed imposition of sentence for the true finding that a principal had been armed. Defendant was ordered to pay mandatory fines and fees, and was given 264 days of presentence custody credit.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

Defendant filed a timely notice of appeal from the judgment.

**Evidence presented**

Karrmell Stone (Stone) testified that he and his friend Dexter Williams (Williams) were approached by three men on August 15, 2014. One of the men, whom Stone later identified as defendant, offered to sell him marijuana. Stone left to get money and about 15 minutes later, arrived with Williams at the prearranged alley meeting place, where the three men waited. Defendant told Stone and Williams to come further into the alley so they would not be seen, and one of the other men asked to use Stone's phone. Stone gave defendant the agreed upon $60, but defendant wanted more money.

Feeling uneasy, Stone asked for his phone and money back, but the man with his phone pulled out a gun, placed the gun against Stone's ribcage, and said, "Give me all your shit before I spark." Stone understood "spark" to mean shoot, and was very frightened. He took out his wallet to get the remainder of his money, and asked to keep his wallet because he needed it for a job interview the following week. The man replied, "No, we are going to take it because if you snitch on us, we are going to find you." Stone interpreted the man's words as a threat to come to his home and harm him or his roommates if he said anything to law enforcement. Stone took the threat seriously and was afraid for his roommates' safety. Defendant patted down Williams, but found nothing. The third man acted as a lookout.

Stone testified that he had $140 in his wallet, including the $60, along with a bank card, driver's license, his social security card, a bus card, his medical marijuana card, a room key, and other cards. After taking the wallet, the robbers told Stone and Williams to turn around and run, which they did without looking back. Stone was afraid to report the crime because of the threat, but made a report after urging by his mother. Stone met with Long Beach police officers and identified defendant from a six-pack photographic lineup as one of the robbers.

Officers Robert Davenport and Carlos Del Real both testified that they participated in defendant's arrest on the day of the robbery. While Officer Del Real was removing defendant from the car in which defendant had been a passenger, he saw

3

defendant drop a handgun onto the ground. After Officer Del Real handcuffed defendant, Officer Davenport recovered the gun and determined that it contained three live rounds. A short while later, Officer Del Real found cards on the floorboard of Officer Davenport's car, below the area where defendant had been seated in the patrol car. Among the cards were Stone's social security and identification cards.

## DISCUSSION

## I. Substantial evidence of attempting to dissuade a witness by force or threat (count 4)

Defendant contends that there was insufficient evidence to support his conviction as an aider and abettor to a violation of section 136.1, subdivision (c)(1). Under that provision, a person is guilty of a felony if he knowingly and maliciously attempts to prevent or dissuade a victim or witness to a crime from making any report to law enforcement, where the act is accompanied by force or by an express or implied threat of force or violence upon the witness, victim, or any third person. (§ 136.1, subd. (c)(1).)

"All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission . . . are principals in any crime so committed." (§ 31.) "[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and [with] (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 561.) For aiding and abetting liability to attach, the intent to aid and abet may be formed during commission of the offense. (See *People v. Cooper* (1991) 53 Cal.3d 1158, 1164-1165.) Whether a defendant aided and abetted another person is a question of fact. (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.) Factors relevant to determining whether substantial evidence supports a finding that defendant was an aider and abettor include companionship and conduct before, during, or after the offense. (*Ibid*.; *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094-1095.)

4

"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]  On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314.)  "The same standard applies when the conviction rests primarily on circumstantial evidence.  [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  "An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence.  [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 396.)  Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'  [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Defendant argues that there was no evidence that defendant engaged in some conduct or committed some act "to aid or encourage the perpetrator's gratuitous and independent threat."  Defendant does not challenge the sufficiency of the evidence showing that defendant aided and abetted the robbery.  Indeed, uncontradicted evidence showed that defendant lured Stone and Williams into the alley, demanded more money after receiving Stone's $60, and patted down Williams while his accomplice took Stone's property at gunpoint.

Defendant suggests that he was present solely to commit a robbery and did nothing other than continue with that criminal activity while his accomplice suddenly committed an unplanned, independent crime.[2]  In short, defendant concludes that the evidence showed no more than his presence, silence, and failure to prevent the express threat to find Stone if he snitched.  Defendant argues that the fact that Stone's

---

[2]     Although the evidence might have supported liability under the natural and probable consequence doctrine, the jury was not instructed on that form of aiding and abetting.  Thus, it is not relevant to our discussion. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.)

5

identification cards were found the day of his arrest in a patrol car, at most supported liability as an accessory to dissuading a witness.[3] While *mere* presence at the scene of a crime and the failure to prevent the crime are insufficient to establish aiding and abetting liability (*People v. Durham* (1969) 70 Cal.2d 171, 181), we reject defendant's characterization of the evidence as showing no more than his presence, failure to prevent the verbal threat, or aiding his accomplice as an accessory after the fact.

Initially, we note that the crime was committed not only by the utterance of threatening words, as defendant's argument suggests. A felony attempt to prevent or dissuade a victim or witness from reporting a crime may be committed by an express or implied threat of force or violence. (§ 136.1, subd. (c)(1).) Here, the jury could reasonably have inferred that the implied threat of force or violence was twofold, consisting not only of the words spoken by defendant's accomplice, but also by the retention of the wallet with Stone's identification.

The perpetrator's intent to dissuade the victim from reporting the crime was clear from the words of the threat, and defendant's presence at the scene and his close proximity to the perpetrator were facts from which the jury could reasonably infer that defendant had heard it and that he understood his accomplice's intent. Further, defendant's accomplice clearly spoke for both himself and defendant, when he said, "No, *we* are going to take it because if you snitch on us, *we* are going to find you." (Italics added.) Defendant did not simply fail to contradict his accomplice, as defendant suggests, nor did he simply stand by silently. Rather, defendant demonstrated his agreement with the statement and the perpetrator's purpose by telling the victims to turn around and run, thus facilitating the retention of the wallet. Defendant's conduct after the crime provided further evidence of his intent to assist in dissuading Stone from reporting the crime by keeping Stone's identification cards. When defendant was arrested, he

---

[3]    An accessory is one "who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony." (§ 32.)

6

apparently had Stone's identification and other cards on his person, as they were found near his seat in Officer Davenport's patrol car.

In sum, substantial evidence supports findings that defendant formed the intent to aid and abet the dissuasion of the victim during the utterance of the verbal threat, and that he then aided his accomplice to retain the wallet and identification cards by telling the victim to run.

## II.  Section 654

Defendant contends that concurrent sentence on count 4, attempt to dissuade a witness, was unauthorized, and instead it should have been stayed pursuant to section 654, because the act constituting the offense was indivisible from the robbery.

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)  Section 654 thus prohibits punishment for two crimes arising from an indivisible course of conduct.  (*People v. Hester* (2000) 22 Cal.4th 290, 294.)

Respondent contends that defendant has forfeited this issue by his admission of the bail enhancement allegation in exchange for a sentence of seven years, as "defendants are estopped from complaining of sentences to which they agreed." (*People v. Hester, supra*, 22 Cal.4th at p. 295.)  Defendant points out, however, there is no indication in the record that waiver of section 654 was contemplated within the plea agreement, and a section 654 stay of the count 4 sentence would not change the seven-year term that defendant agreed to serve.  Nevertheless, defendant's contention that section 654 applies to count 4 is without merit.

"Section 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*People v. Jones* (2012) 54 Cal.4th 350, 358.)  However, "what is a single physical act might not always be easy to ascertain.  In some situations, physical acts might be simultaneous yet separate for purposes of section 654." (*Ibid.*)  In such circumstances, the question may be resolved under the intent and objective test.

(*People v. Chung* (2015) 237 Cal.App.4th 462, 469; see *People v. Jones*, *supra*, at p. 370 (conc. opn. of Liu, J.).) Under that test, "[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on other grounds by *People v. Correa* (2012) 54 Cal.4th 331, 334, 336.)

"Because of the many differing circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an 'act or omission,' there can be no universal construction which directs the proper application of section 654 in every instance. [Citation.]" (*People v. Beamon* (1973) 8 Cal.3d 625, 636.) Thus, whether a course of criminal conduct is divisible presents a factual issue for the trial court, and we will uphold its ruling if supported by substantial evidence. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) "[T]he trial court . . . is vested with broad latitude in making its determination. [Citations.] It's findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Defendant contends that the intent and objective test does not apply here because the single act of pointing the gun at Stone accomplished both the robbery and the intimidation of the witness by force or threat of force. On the contrary, as respondent points out, defendant committed separate acts motivated by different objectives. Defendant's accomplice committed the robbery by pointing the gun at Stone and threatening to shoot him unless he handed over his property. Once Stone complied, *then* with the separate objective of attempting to dissuade Stone from speaking to law enforcement, the accomplice issued a second threat to use the contact information in Stone's wallet to find him. Under such circumstances, section 654 does not apply. (See *People v. Latimer* (1993) 5 Cal.4th 1203, 1211-1212; cf. *People v. Coleman*, *supra*, 48

8

Cal.3d at p. 162 [defendant robbed victim, killed another, then assaulted robbery victim to dissuade her from sounding alarm]; *People v. Nichols* (1994) 29 Cal.App.4th 1651, 1654 [threat made to dissuade hijacking and robbery victim from reporting crime].)

We conclude that substantial evidence supports a finding that defendant's course of conduct was divisible and involved separate criminal objectives. The trial court did not err in imposing separate punishment for the robbery and the attempt to dissuade the victim from reporting the robbery.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT


9