**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MELVIN MARTINEZ-LOPEZ, AKA
Jorge Lopez, AKA Melvin Miscael
Martinez, AKA Miguel Angel
Rodriguez, AKA Manuel Rodriguez-
Pena,
*Defendant-Appellant.*

No. 14-50014

D.C. No. 2:12-
cr-00973-ABC-1

OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted En Banc January 17, 2017
San Francisco, California

Filed July 28, 2017

Before: Sidney R. Thomas, Chief Judge, and Stephen
Reinhardt, Alex Kozinski, Diarmuid F. O'Scannlain,
M. Margaret McKeown, Marsha S. Berzon, Richard C.
Tallman, Richard R. Clifton, Jay S. Bybee, Consuelo M.
Callahan and Carlos T. Bea, Circuit Judges.

Opinion by Judge Tallman;
Partial Concurrence and Partial Dissent by Judge Berzon;
Partial Concurrence and Partial Dissent by Judge Bybee;
Dissent by Judge Reinhardt

## SUMMARY[*]

### Criminal Law

The en banc court affirmed a sentence in a case taken en banc to revisit the divisibility of California drug statutes in light of recent guidance from the United States Supreme Court.

The en banc court held that California Health and Safety Code section 11352, which criminalizes a variety of activities related to certain controlled substances identified by reference to other code provisions, is divisible with regard to both its controlled substance requirement and its actus reus requirement. The en banc court held that the district court therefore properly applied the modified categorical approach, and in doing so, correctly found that the defendant pled guilty to selling cocaine, which qualifies as a drug trafficking offense under the federal sentencing guidelines and subjects him to a 16-level enhancement to his base offense level. The en banc court concluded that the sentence imposed, based on a properly calculated guidelines range, is substantively reasonable.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Concurring in part and dissenting in part, but frustrated with the whole endeavor, Judge Bybee wrote that California Health and Safety Code § 11352(a) functions as a new form of "wobbler" statute in regards to the actus reus. He wrote that the "demand for certainty" required by *Mathis v. United States*, 136 S. Ct. 2243 (2016), to conclude that the statute identifies elements rather than means is not satisfied, and that the sentence enhancement therefore cannot stand.

Judge Berzon, joined by Chief Judge Thomas and Judge Reinhardt except as to Part IV, concurred in part and dissented in part. Judge Berzon dissented as to the majority's decision on the actus reus component of § 11352(a). After applying all three steps outlined in *Mathis*, she concluded that it is most likely that the enumerated actions are different means of committing the offense stated in § 11352(a), not alternative elements, but there are some contrary indications. She would certify the question to the California Supreme Court. She concurred with respect to the statute's controlled substance component, with the caveat that there have been changes in related California legal principles in recent years that may have undermined the assumptions in *In re Adams*, 536 P.2d 473 (Cal. 1975), as to whether a specific controlled substance is an element that must be proven beyond a reasonable doubt to a jury or admitted by the defendant.

Judge Reinhardt, joined by Chief Judge Thomas, dissented, joining Judge Berzon's opinion except as to Part IV. He would certify to the California Supreme Court the question of the divisibility of the controlled substance provision as well as of the actus reus provision.

**COUNSEL**

David Menninger (argued) and Matthew B. Larsen, Deputy Federal Public Defenders; Hilary L. Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

L. Ashley Aull (argued), Assistant United States Attorney, Criminal Appeals Section; Robert E. Dugdale and Lawrence S. Middleton, Chiefs, Criminal Division; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

Vincent J. Brunkow and Kara Hartzler, Federal Defenders of San Diego, Inc., San Diego, California, for Amici Curiae Ninth Circuit Federal Public and Community Defenders.

Albert Camacho, Jr., Graciela Martinez, Albert J. Menaster, and Ronald L. Brown, Los Angeles, California, as and for Amicus Curiae Los Angeles County Office of the Public Defender.

---

**OPINION**

TALLMAN, Circuit Judge:

**OVERVIEW**

We took this case en banc to revisit the divisibility of California drug statutes.[1] This case involves California

---

[1] In *Guevara v. United States*, 136 S. Ct. 2542 (2016), the Supreme Court granted certiorari, vacated our decision finding California Health and Safety Code section 11351 divisible, and remanded with instructions

Health and Safety Code section 11352, which—like many California drug statutes—criminalizes a variety of activities related to certain controlled substances identified by reference to other code provisions. If a categorically overbroad statute like section 11352 is divisible, then it is subject to the modified categorical approach, and a prior state conviction under that statute might constitute a predicate "drug trafficking offense" under the federal sentencing guidelines. We clarify the analysis to be employed in light of the most recent guidance from the United States Supreme Court.

Melvin Martinez-Lopez was convicted of illegal reentry following deportation in violation of 8 U.S.C. § 1326. The district court assumed that section 11352 is divisible based on our prior decisions, and concluded that Martinez-Lopez's prior conviction under section 11352 qualifies as a federal drug trafficking offense under the modified categorical approach. It therefore imposed a 16-level enhancement to his base offense level and sentenced him to 77 months in prison.

On appeal, Martinez-Lopez argues that section 11352 is indivisible with regard to both its controlled substance requirement and its actus reus requirement. We disagree, and conclude that both requirements are elements under *Mathis*, thus rendering section 11352 divisible and subject to the modified categorical approach. Because Martinez-

---

to reconsider in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016). Because *Guevara* was based on related decisions involving similar California drug statutes, *see, e.g.*, *Coronado v. Holder*, 759 F.3d 977 (9th Cir. 2014); *United States v. Huitron-Rocha*, 771 F.3d 1183 (9th Cir. 2014); *United States v. Torre-Jimenez*, 771 F.3d 1163 (9th Cir. 2014), we respond to the Supreme Court's instruction by revisiting the entire line of cases.

Lopez previously pled guilty to selling cocaine, which qualifies as a drug trafficking offense under the guidelines, and because his sentence is substantively reasonable, we affirm.

## I. BACKGROUND

As a child, Miguel Angel Rodriguez—known in this case as Melvin Martinez-Lopez—ran away from his family in Guatemala to escape physical abuse by his alcoholic father. He entered the United States illegally when he was 12 years old and moved in with his aunt in Los Angeles County. Later, he began living on the streets and in shelters. He eventually became involved with a local street gang and started selling drugs.

Martinez-Lopez was convicted in California state court of selling cocaine in 1993, and again in 1994. He was deported upon release from his 1994 prison sentence, but he promptly returned to the United States. In January 1998, Martinez-Lopez was again convicted for selling cocaine after he pled guilty to violating California Health and Safety Code section 11352(a), which makes it a crime to transport, import, sell, furnish, administer, give away; or offer to transport, import, sell, furnish, administer, or give away "any controlled substance specified" in a number of cross-referenced code provisions. Martinez-Lopez served time in state prison and was again deported upon release in 2001.

Martinez-Lopez continued his recidivist pattern of returning to the United States after deportation—in part to be with his children and their mother, whom he considers to be his wife. In 2003, he was convicted of illegal reentry, sentenced to 21 months in federal prison, and deported upon release. In 2006, he was again convicted of illegal reentry, sentenced to 77 months in prison, and deported upon release.

Finally, in 2014, he was once again convicted of illegal reentry and is now serving another 77-month sentence.

This final sentence is at issue before us. The district court based the current 77-month sentence on a guidelines sentencing range of 70 to 87 months, which was itself driven by the 16-level enhancement. This enhancement is imposed under the federal sentencing guidelines when a defendant was previously deported following a conviction "for a felony . . . drug trafficking offense for which the sentence imposed exceeded 13 months." U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2L1.2(b)(1)(A)(i) (U.S. Sentencing Comm'n 2012).[2] To qualify as a drug trafficking offense under the guidelines, the offense must involve a substance listed in the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, *see United States v. Leal-Vega*, 680 F.3d 1160, 1167 (9th Cir. 2012), and involve the violation of a law which "prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2 cmt. n.1(B)(iv).

The district court recognized that a conviction under California's section 11352 does not categorically qualify as a drug trafficking offense because section 11352 criminalizes a broader range of activity and a greater variety of controlled substances than does federal law. *See Mielewczyk v. Holder*, 575 F.3d 992, 995 (9th Cir. 2009) (section 11352 categorically overbroad with regard to its

---

[2] Martinez-Lopez was sentenced under the November 12, 2012, edition of the federal sentencing guidelines, which have been revised on multiple occasions in subsequent years.

controlled substance requirement); *United States v. Rivera-Sanchez*, 247 F.3d 905, 909 (9th Cir. 2001) (en banc) (section 11352 categorically overbroad with regard to its actus reus requirement), *superseded on other grounds by* U.S.S.G. § 2L1.2 cmt. n.4 (2002).[3]  However, the district court went on to determine that the prior conviction nonetheless qualified as a drug trafficking offense under the modified categorical approach—relying on our prior determination that section 11352 is a divisible statute. *See Huitron-Rocha*, 771 F.3d at 1184.  Because a California Superior Court plea colloquy shows that Martinez-Lopez pled guilty to selling cocaine, the district court concluded that the section 11352 conviction qualified as a predicate drug trafficking offense.  It therefore applied the 16-level enhancement, which resulted in a guidelines range of 70 to 87 and a sentence of 77 months in prison.

Martinez-Lopez raises three arguments on appeal.  First, he argues that his 1998 conviction cannot qualify as a predicate drug trafficking offense because section 11352 is indivisible with regard to its controlled substance requirement.  Second, he argues that section 11352 is indivisible with regard to its actus reus requirement.  Third, he argues that his sentence is substantively unreasonable. We reject each in turn.

---

[3] Section 11352 is categorically overbroad with regard to its actus reus requirement because it criminalizes the mere "offer to" commit certain offenses related to a controlled substance.  *Rivera-Sanchez*, 247 F.3d at 908–09.  The version of section 11352 in effect at the time of Martinez-Lopez's conviction was also categorically overbroad because it criminalized the transportation of a controlled substance for personal use, which is not a drug trafficking offense under the Controlled Substances Act.  *See United States v. Rosales-Aguilar*, 818 F.3d 965, 973 (9th Cir. 2016).

## II. DISCUSSION

We apply a three-step analysis to determine whether a prior conviction under state law qualifies as a predicate drug trafficking offense under the federal sentencing guidelines. First, we ask whether the state law is a categorical match with a federal drug trafficking offense. *See Taylor v. United States*, 495 U.S. 575, 599–600 (1990). At this step, we look only to the "statutory definitions" of the corresponding offenses. *Id.* at 600. If a state law "proscribes the same amount of or less conduct than" that qualifying as a federal drug trafficking offense, then the two offenses are a categorical match. *United States v. Hernandez*, 769 F.3d 1059, 1062 (9th Cir. 2014) (per curiam). In that scenario, a conviction under state law automatically qualifies as a predicate drug trafficking offense—ending our analysis. *See Taylor*, 495 U.S. at 599.

We have already held that section 11352, like many California drug statutes, is not a categorical match with a federal drug trafficking offense. *See Mielewczyk*, 575 F.3d at 995 (controlled substance requirement); *Rivera-Sanchez*, 247 F.3d at 909 (actus reus requirement). This case, therefore, turns on the second step of our analysis.

At the second step, we ask whether section 11352 is a divisible statute which "sets out one or more elements of the offense in the alternative." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). In *Mathis*, the Supreme Court reiterated the importance of the abstract comparison of elements, explaining that a statute is divisible only when it "list[s] elements in the alternative, and thereby define[s] multiple crimes." 136 S. Ct. at 2249. *Mathis* did not change the rule stated in *Descamps*; it only reiterated that the Supreme Court meant what it said when it instructed courts to compare elements.

However, *Mathis* also instructed courts not to assume that a statute lists alternative elements and defines multiple crimes simply because it contains a disjunctive list. *Id.* Although we properly articulated the elements-based test before *Mathis* was decided, *see Rendon v. Holder*, 764 F.3d 1077, 1086 (9th Cir. 2014), our prior decisions on California drug statutes have often put undue emphasis on the disjunctive-list rationale criticized in *Mathis*. *See, e.g.*, *Huitron-Rocha*, 771 F.3d at 1184 (relying on *Coronado* to find section 11352 divisible); *Torre-Jimenez*, 771 F.3d at 1166–67 (relying on *Coronado* to find Section 11351 divisible); *Coronado*, 759 F.3d at 984 ("[B]y its very terms, § 11377(a) list[s] potential offense elements in the alternative. . . . Use of the modified categorical approach is therefore appropriate . . . ." (citation and quotation marks omitted)); *see also Guevara*, 136 S. Ct. at 2542 (vacating decision relying on *Torre-Jimenez* and remanding for reconsideration in light of *Mathis*).

Instead, *Mathis* instructs us to consult "authoritative sources of state law" to determine whether a statute contains alternative elements defining multiple crimes or alternative means by which a defendant might commit the same crime. *Mathis*, 136 S. Ct. at 2256. The Court begins by describing two "easy" scenarios, which occur when (1) a state court decision "definitively answers the question," or (2) the statute "on its face . . . resolve[s] the issue." *Id.* The Court then explains that "if state law fails to provide clear answers," we should "peek at the record documents . . . for the sole and limited purpose of determining whether the listed items are elements of the offense" under state law. *Id.* at 2256–57 (alterations and quotation marks omitted) (quoting *Rendon*, 782 F.3d at 473–74 (Kozinski, J., dissenting from denial of reh'g en banc)). Finally, the Court observes that in most cases we will be able to determine

whether a law is divisible or indivisible. *Id*. at 2257 ("[I]ndeterminacy should prove more the exception than the rule.").

If section 11352 is divisible under *Mathis*, then we may proceed to the third step in our analysis and apply the modified categorical approach. At this step, we examine judicially noticeable documents of conviction "to determine which statutory phrase was the basis for the conviction." *Descamps*, 133 S. Ct. at 2285 (quoting *Johnson v. United States*, 559 U.S. 133, 144 (2010)). If the defendant pled or was found guilty of the elements constituting a federal drug trafficking offense, the prior state conviction may serve as a predicate offense under the sentencing guidelines. *See Shepard v. United States*, 544 U.S. 13, 16 (2005).

It bears repeating that we may apply the modified categorical approach only when we first determine that a statute is divisible—if a statute is both overbroad and indivisible, a prior conviction under that statute will never qualify as a predicate drug trafficking offense under the federal sentencing guidelines. For this reason, Martinez-Lopez's case turns on the divisibility of section 11352.

## A. Controlled Substance Requirement

Martinez-Lopez first argues that his prior conviction cannot qualify as a predicate offense because section 11352 is indivisible with regard to its controlled substance requirement. We review divisibility of a statute de novo, *Almanza-Arenas v. Lynch*, 815 F.3d 469, 477 (9th Cir. 2016) (en banc), and we disagree.

With respect to the controlled substance requirement, we conclude that this is an "easy" case because a "state court decision definitively answers the question." *Mathis*, 136 S.

Ct. at 2256. In 1975, the California Supreme Court decided *In re Adams*, 536 P.2d 473 (Cal. 1975). *Adams* addressed section 654 of the California Penal Code, which prohibits multiple sentences for a single "act or omission that is punishable in different ways by different provisions of law." Cal. Penal Code § 654. *Adams* held that, under section 654, a defendant cannot receive multiple sentences for the simultaneous transportation of different types of drugs when the defendant transports the different drugs with a single criminal objective.   536 P.2d at 476–77.   But *Adams* cautioned that it "d[id] not disapprove" of earlier cases imposing multiple sentences for simultaneous possession of different drugs. *Id.* at 477 (citing, *e.g.*, *People v. Lockwood*, 61 Cal. Rptr. 131 (Ct. App. 1967); *People v. Lopez*, 337 P.2d 570 (Cal. Ct. App. 1959)).   Instead, *Adams* distinguished those cases, explaining that multiple sentences are proper so long as the defendant has multiple criminal objectives—for example, when a defendant intends to sell to multiple buyers. *Id*.

Moreover, *Adams* implicitly approved of multiple *convictions* even when a defendant has a single criminal objective because *Adams* modified only the criminal judgment by staying execution of the multiple *sentences*, leaving intact the separate convictions.   *Id.* at 479.   The California Supreme Court has reaffirmed these principles as recently as 2012. *See People v. Jones*, 278 P.3d 821, 827 (Cal. 2012) (finding violation of section 654 but reiterating that the court "do[es] not intend to cast doubt on the cases" holding that "'simultaneous possession of different items of contraband' are separate" crimes (citation omitted)).

As a result of *Adams* and its progeny, defendants are routinely subjected to multiple convictions under a single statute for a single act as it relates to multiple controlled

substances.  *See, e.g.*, *People v. Monarrez*, 78 Cal. Rptr. 2d 247, 248 (Ct. App. 1998) (finding no violation of section 654 and affirming separate sentences for simultaneous possession of heroin and cocaine for sale in violation of section 11351).  Section 11352 is no exception to this prosecutorial charging practice.  *See, e.g.*, *Adams*, 536 P.2d. at 475–77 (finding violation of section 654 but otherwise approving of multiple convictions for simultaneous transportation of heroin and pantopon in violation of section 11352); *People v. Chung*, 187 Cal. Rptr. 3d 873, 878–80 (Ct. App. 2015) (same with regard to simultaneous offers to sell cocaine and cocaine base).

Because defendants are routinely subjected to such convictions, and because such convictions are recognized as separate crimes by the California Supreme Court, we have a "definitive[] answer[]":  the controlled substance requirement in section 11352 does not simply describe "alternative methods of committing one offense."  *Mathis*, 136 S. Ct. at 2256 (citation, alterations, and quotation marks omitted in second quotation).  Rather, because "the possession of one [substance] is not essential to the possession of another [substance]," *In re Hayes*, 451 P.2d 430, 436 (Cal. 1969) (Traynor, C.J., dissenting), *overruled on other grounds by Jones*, 278 P.3d at 826–27, section 11352 creates separates crimes, each containing "an *element* not contained in the other," *United States v. Ford*, 371 F.3d 550, 553 (9th Cir. 2004) (emphasis added) (quoting *United States v. Dixon*, 509 U.S. 688, 696 (1993), which describes the test for double jeopardy).  Thus, section 11352 is divisible with regard to its controlled substance requirement.

Although we need look no further because the California Supreme Court has spoken on the issue, *see Mathis*, 136 S. Ct. at 2256, our conclusion is also supported by persuasive

authority on California law.  For example, California jury instructions require a jury to fill in a blank identifying "a controlled substance"—i.e., only one—demonstrating that the jury must identify and unanimously agree on a particular controlled substance.   Judicial Council of California Criminal Jury Instructions (CALCRIM) 2301; *see also United States v. Vidal*, 504 F.3d 1072, 1084 n.20 (9th Cir. 2007) (en banc) (noting that the California Criminal Jury Instructions "are the official instructions for use in the state of California" (quoting Cal. Rules of Court 2.1050)). Additionally, a leading commentator on California law describes "[a] specified controlled substance" as an element common to all criminal drug offenses.  2 Witkin, Cal. Crim. Law § 102(1)(a) (4th ed. 2012).

We see no need to belabor the point by responding to Martinez-Lopez's arguments regarding decisions by California appellate courts.  Because the California Supreme Court recognizes multiple section 11352 convictions for a single act as it relates to multiple controlled substances, *see Jones*, 278 P.3d at 827; *Adams*, 536 P.2d at 477, it has implicitly held that the controlled substance requirement is an element.  As the final expositor of California law, we find its reasoning persuasive and conclude that section 11352 is divisible with regard to its controlled substance requirement.

### B. Actus Reus Requirement

Martinez-Lopez next argues that his prior conviction cannot qualify as a predicate offense under the federal sentencing guidelines because section 11352 is indivisible with regard to its actus reus requirement.  We disagree and conclude that Martinez-Lopez's argument is foreclosed by another controlling state decision.

In *People v. Patterson*, 778 P.2d 549 (Cal. 1989), the California Supreme Court considered application of the felony-murder doctrine to convictions under section 11352. *Patterson* first explained that, under the felony-murder doctrine, courts must evaluate the inherent dangerousness of a crime based on "the elements of the felony in the abstract," and not based on the "particular facts of the case." *Id.* at 554 (citation and internal quotation marks omitted in second quotation). It then reversed the decision below, which concluded that "a violation of section 11352" is not inherently dangerous, *id.* at 553, and held that the proper inquiry is instead whether "the specific offense of furnishing cocaine" is inherently dangerous, *id.* at 555. The court went on to explain that:

> To create statutes separately proscribing the importation, sale, furnishing, administration, etc., of each of these drugs, would require the enactment of hundreds of individual statutes. It thus appears that for the sake of convenience the Legislature has included the various offenses in one statute.

*Id.* at 556. In this way, *Patterson* unequivocally held that section 11352 "creat[es] . . . separate crimes" based on alternative actus rei elements, and does not merely describe "alternative ways of satisfying a single [actus reus] element." *Mathis*, 136 S. Ct. at 2250.

Martinez-Lopez insists that *Patterson* has nothing to do with *Mathis*'s distinction between elements and means because it does not discuss what "the prosecution must prove" and what must be "found by a jury []or admitted by a defendant." 136 S. Ct. at 2249 (citation and quotation mark omitted). It is true that *Patterson* did not describe its

decision in these terms.  However, *Patterson* did describe its method as an abstract comparison of "elements," 778 P.2d at 553, which are—by definition—what the "prosecution must prove to sustain a conviction," *Mathis*, 136 S. Ct. at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). We will not assume that the California Supreme Court failed to recognize the significance of this term, or that it did not actually mean "elements" when it purported to compare "elements."  *Cf. Mathis*, 136 S. Ct. at 2254 ("[A] good rule of thumb for reading . . . decisions is that what they say and what they mean are one and the same . . . .").

Such an assumption is especially unfounded in light of the California Supreme Court's continued reliance on *Patterson* and its elements-based rationale. *See, e.g.*, *People v. Mason*, 802 P.2d 950, 977 (Cal. 1991) (citing *Patterson* and explaining that "[w]hether a felony is inherently dangerous for purposes of the second degree felony-murder rule is determined by viewing the *elements* of the felony in the abstract" (emphasis added) (citations omitted)); *People v. Howard*, 104 P.3d 107, 111 (Cal. 2005) (same). Moreover, it is hard to see how *Patterson* is inapposite when it expressly rejects Martinez-Lopez's theory, then advanced by Justice Stanley Mosk, that "[s]ection 11352 in effect prohibits different ways [or means] of engaging in the same targeted criminal conduct—trafficking in illegal narcotics." 778 P.2d at 565 (Mosk, J., dissenting).

Nor is our conclusion swayed by the decisions cited by Martinez-Lopez.  Many of these decisions do not actually conflict with our reading of *Patterson*.  For example, *People v. Guiton* affirmed a conviction for "selling or transporting" cocaine.  847 P.2d 45, 46 (Cal. 1993).  Martinez-Lopez argues that this combined conviction proves that the actus reus requirement is not an element.  But *Guiton* expressly

recognized that the jury "had to agree that the defendant committed the same act." *Id.* at 51. *Guiton* thus rests on principles of harmless error, and does not conflict with our reading of *Patterson*. *See Guiton*, 847 P.2d at 54 (concluding that there was no "reasonable probability that the jury found the defendant guilty solely on the [unsupported] sale theory"); *see also People v. Mil*, 266 P.3d 1030, 1039 (Cal. 2012) ("[T]he omission of one or more elements of a charged offense . . . is amenable to review for harmless error . . . ."). We come to the same conclusion with regard to *People v. Cornejo*, 155 Cal. Rptr. 238 (Ct. App. 1979), which notes that a defendant violates section 11352 whether he sells or gives away heroin, *id.* at 250.

Finally, to the extent that the cited decisions do conflict with *Patterson*, we find them unpersuasive. Many of these decisions are unpublished, and we will not rely on them. *See* Cal. Rules of Court 8.1115. Others predate, and have been overruled to the extent that they conflict with, *Patterson*. *See Patterson*, 778 P.2d at 566 (Mosk, J., dissenting) (citing *Cornejo*, 155 Cal. Rptr. at 250; *People v. Pierre*, 1 Cal. Rptr. 223, 226 (Ct. App. 1959)). The remaining cases were decided by California Courts of Appeal. Because the California Supreme Court has the final say, we reject these decisions as erroneous to the extent that they conflict with *Patterson*.[4]

---

**4** Although our colleague Judge Berzon suggests that we are presumptuous "to deem these state court decisions incorrect as to state law," *see* Dissenting & Concurring Op. 33, we reiterate that most of these decisions can be explained by a finding of harmless error, *see Mil*, 266 P.3d at 1039, and the degree of conflict is likely minor.

We hold that the actus reus requirement is an element under *Mathis* because the California Supreme Court examined the elements of section 11352 in the abstract and concluded that the statute separately defines "a variety of offenses" including the "importation, sale, furnishing, administration, etc., of each of [the listed] drugs." *Patterson*, 778 P.2d at 556. Section 11352 is therefore divisible with regard to its actus reus requirement.[5]

## C. Application of the Modified Categorical Approach

Because section 11352 is divisible with regard to both its controlled substance requirement and its actus reus requirement, we proceed to the third step in our analysis and apply the modified categorical approach. Under this approach, we look beyond the statutory text to a limited set of documents "to determine which statutory phrase was the basis for the conviction." *Descamps*, 133 S. Ct. at 2285 (citation omitted). These documents include "the terms of a plea agreement or transcript of colloquy . . . in which the

---

[5] The partial concurrence suggests that our reading of *Patterson* is in tension with *People v. Vidana*, 377 P.3d 805 (Cal. 2016). We disagree. In *Vidana*, the California Supreme Court held that a defendant cannot be subjected to multiple convictions for the same offense based on "alternate legal theories." *Id.* at 817. It observed that, to determine whether two offenses are the same, a court must ask whether the "[l]egislature meant to define only one [or multiple] offense[s]." *Id.* at 808. In *Vidana*, the court explained that the legislature had taken larceny and embezzlement, which were previously treated as separate offenses, and "consolidated [them] into the single offense of theft" via a number of additions and amendments to the California Penal Code. *Id.* at 637. The legislature has made no such amendments here, and *Vidana* does not otherwise suggest that the California Supreme Court will revisit its conclusion that the legislature defined "a variety of offenses" in section 11352. *Patterson*, 778 P.2d at 556.

factual basis for the plea was confirmed by the defendant." *Shepard*, 544 U.S. at 26.

In this case, the district court properly examined the plea colloquy in which Martinez-Lopez was asked, "[O]n or about December 31st, 1997, [did] you . . . sell cocaine base—.42 grams of cocaine base?"  He responded, "Yes." Based on this exchange, we can say—with the certainty that *Taylor* demands—that Martinez-Lopez's 1998 conviction under section 11352 was for selling cocaine. *Mathis*, 136 S. Ct. at 2257.  Because this constitutes a drug trafficking offense under the federal sentencing guidelines, the district court correctly imposed a 16-level enhancement to the base offense level for illegal reentry and correctly calculated a guidelines sentencing range of 70 to 87 months.

### D. Substantive Reasonableness

Finally, we reject Martinez-Lopez's argument that his within-range 77-month sentence is substantively unreasonable for a third identical conviction.  We afford significant deference to a district court's sentence under 18 U.S.C. § 3553 and reverse only if the court applied an incorrect legal rule or if the sentence was "illogical, implausible, or without support in inferences that may be drawn from the facts in the record."  *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

Martinez-Lopez argues that his 77-month sentence is substantively unreasonable because his illegal reentry offense and his underlying drug offense were nonviolent, because he had a troubled childhood, and because he is trying to establish a family in the United States.  He also argues that the 16-level enhancement led to an "artificially . . . inflated" sentence.

Because we conclude that section 11352 is divisible and the 16-level enhancement was proper, Martinez-Lopez's sentence is not artificially inflated. Moreover, although a district court is not required to give a lengthy explanation for its within-guidelines sentence, *Rita v. United States*, 551 U.S. 338, 356–57 (2007), the record shows that the district court carefully weighed the facts now argued again on appeal. It acknowledged that the prior offenses "did not involve any violence, and [that] the Defendant is . . . trying to finally have a family," but found these facts insufficient to warrant a below-guidelines sentence. Instead, the court noted the obvious need for deterrence in light of Martinez-Lopez's recidivism and concluded that "the same length as the last time [would be] sufficient for that."

Finally, although Martinez-Lopez relies on *United States v. Amezcua-Vasquez,* 567 F.3d 1050 (9th Cir. 2009), that case is easily distinguished. In *Amezcua-Vasquez*, we concluded that a sentence was substantively unreasonable when a defendant received a 16-level enhancement based on a single conviction that occurred 20 years prior. *Id.* at 1056, 1058. But in this case, Martinez-Lopez has a lengthy criminal record and has received multiple convictions including for illegal reentry in 2003 and in 2006; and for possession of heroin in 2012. In sum, *Amezcua-Vasquez* is simply a different case from this recidivist offender.

Because a judge is not "*required* to sentence at a variance with" the sentencing guidelines, *United States v. Mitchell*, 624 F.3d 1023, 1030 (9th Cir. 2010) (quoting *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010)), and because the sentence based on this record is not "illogical, implausible, or without support," *Hinkson*, 585 F.3d at 1263, we affirm Martinez-Lopez's 77-month sentence as substantively reasonable.

## III. CONCLUSION

Section 11352 is divisible with regard to both its controlled substance requirement and its actus reus requirement. For this reason, the district court properly applied the modified categorical approach and correctly found that Martinez-Lopez pled guilty to selling cocaine, which qualifies as a drug trafficking offense under the federal sentencing guidelines and subjects Martinez-Lopez to a 16-level enhancement to his base offense level. Finally, the 77-month sentence, based on a properly calculated guidelines range of 70 to 87 months, is substantively reasonable.

**AFFIRMED.**

---

BERZON, Circuit Judge, with whom Chief Judge THOMAS and Circuit Judge REINHARDT join, except as to Part IV, concurring in part, and dissenting in part:

I respectfully dissent as to the majority's decision on the actus reus component of California Health and Safety Code § 11352(a). I concur with respect to the statute's controlled substance component, with a caveat.

### I.

As the Supreme Court has underscored repeatedly, the elements of the statute of conviction must be the sole focus in every application of the categorical or modified categorical approach. *See Mathis v. United States*, 136 S. Ct. 2243, 2248, 2251–52 (2016); *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). The Court has emphasized that "elements" in this context is not a diaphanous word but

means one thing and one thing only: "the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S. Ct. at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). The elements of a crime, the Court reiterated, are "what the jury must find beyond a reasonable doubt to convict the defendant" at trial, or "what the defendant *necessarily* admits when he pleads guilty." *Id.* (emphasis added) (citations omitted).

The Court has explained that this focus on what is "necessarily found or admitted," *id.* at 2249, is required by three distinct considerations: statutory requirements, constitutional protections, and practical realities. *See Descamps*, 133 S. Ct. at 2287. First, sentencing statutes referring to prior "convictions" indicate that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Id.* (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)) (internal quotation marks omitted). Second, when a court increases the penalty for a crime based on any fact beyond the fact of conviction, it jeopardizes the Sixth Amendment protections described in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). *Id.* at 2288. Third, an elements-only approach largely saves sentencing courts from the "'daunting' difficulties and inequities" incident to reviewing old plea colloquies or trial transcripts, both of which may contain unclear or erroneous references to the factual bases for conviction. *Id.* at 2289 (quoting *Taylor*, 495 U.S. at 601–02).

"The comparison of elements that the categorical approach requires is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime." *Mathis*, 136 S. Ct. at 2248. If an indivisible statute

of conviction proscribes more conduct than the generic federal offense, a federal court cannot impose penalties based on that conviction. *Id.* at 2248–49. But identifying the elements of a statutory crime is harder when statutes have "a more complicated (sometimes called 'divisible') structure." *Id.* at 2249. Statutes that list various factors in the alternative, some of which go beyond the generic federal crime, may qualify as divisible, but they also may not. Disjunctively worded statutes may identify several "elements in the alternative, and thereby define multiple crimes," or may, instead, "enumerate[] various factual means of committing a single element." *Id.* So, when a statute lists alternative factors, a sentencing court needs to figure out which was intended—an enumeration of alternative elements or of various means.

That determination is critically important. If the factors are separate elements, then the sentencing court may employ a "modified categorical approach" and look at "a limited class of documents" in the record of conviction "to determine what crime, with what elements, a defendant was convicted of." *Id.* This modified approach is not allowed, however, if the statute lists "different methods of committing one offense." *Id.* at 2254 (quoting *Descamps*, 133 S. Ct. at 2285 n.2). Rather, in that circumstance, the statute must be treated as indivisible and held categorically overbroad. *See Descamps*, 133 S. Ct. at 2292–93.

Applying the modified approach without carefully ensuring that a statute sets out alternative elements, not merely alternative means, allows a court to "go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense." *Mathis*, 136 S. Ct. at 2252. Premature application of the modified approach thus "raise[s] serious Sixth Amendment concerns."

*Id.* Accordingly, determining whether a disjunctively worded statute refers to alternative elements or alternative means is subject to the Court's more general "demand for certainty when identifying a generic offense." *Shepard v. United States*, 544 U.S. 13, 21–22 (2005); *see also Mathis*, 136 S. Ct. at 2257. When uncertainty exists, federal courts must err on the side of caution. *See generally Mathis*, 136 S. Ct. at 2257.

The practical reasons underlying the categorical approach help illuminate the special dangers of improperly applying the modified approach, particularly in cases like this one, where the past conviction resulted from a guilty plea, not a trial. As the Court noted in *Descamps*, defendants "often ha[ve] little incentive to contest facts that are not elements of the charged offense—and may have good reason not to." 133 S. Ct. at 2289. At plea hearings, defendants may conclude it is in their best interest not to "irk" prosecutors or the court "by squabbling about superfluous factual allegations" irrelevant to those proceedings. *Id.* So, because plea records are among the documents a sentencing court can examine once use of the modified approach is clearly warranted, *see Shepard*, 544 U.S. at 20, over-eager deployment of the modified approach can lead to sentencing enhancements based on information that "may be downright wrong," and can "deprive some defendants of the benefits of their negotiated plea deals," *Descamps*, 133 S. Ct. at 2289.

To aid in avoiding these potential problems and concerns, the Court in *Mathis* provided detailed instructions regarding how to apply the categorical approach to disjunctively worded statutes so as to achieve the requisite "demand for certainty," 136 S. Ct. at 2257 (citation omitted), as to whether, to sustain a valid conviction, a particular factor must be found unanimously by a jury or admitted. *See*

*id.* at 2256–57. These instructions require us to look, first, to authoritative state law sources concerning whether each disjunctively listed item is a separate element or just a possible means of committing the same crime. Our inquiry is over if "a state court decision *definitively* answers the question," or if "the statute on its face . . . resolve[s] the issue." *Id.* at 2256 (emphasis added). Where those authoritative sources of state law fail to provide a definite answer, *Mathis* instructs courts to take a limited "peek" at the record of conviction to help determine whether the statute is divisible. *See id*. (citation omitted).

The majority opinion here ignores the Court's repeated direction to focus only on what *must* be admitted or proven beyond a reasonable doubt to sustain a conviction. *See id.* at 2254, 2257. And it fails fully to apply *Mathis*'s instructions. The majority instead rests its divisibility analysis as to the actus reus component of section 11352(a) on a state court decision that fails to provide a *definitive* answer to the question whether each enumerated act is a separate element defining a separate crime under the statute. And it does not reach *Mathis*'s third instruction.

After applying all three steps outlined in *Mathis*, I conclude that it is most likely that the enumerated actions are different means of committing the offense stated in section 11352(a), not alternative elements, but that there are some contrary indications. To decide whether the modified categorical approach may be applied in this case, we would have to make a fundamental legal determination about an unresolved, repeatedly arising, and independently important state law issue. I therefore suggest that a better approach in this circumstance would be to certify to the California Supreme Court the question:

> To support a conviction under Health and Safety Code section 11352(a)'s proscription of "transport[ing], import[ing] into this state, sell[ing], furnish[ing], administer[ing], or giv[ing] away, or offer[ing] to transport, import into this state, sell, furnish, administer, or give away, or attempt[ing] to import into this state or transport," certain referenced controlled substances, must a jury find beyond a reasonable doubt, or must a defendant necessarily admit, that the defendant committed one particular listed activity, e.g., "sell[ing]," with respect to the controlled substance; or can a defendant be convicted where the jury finds, or the defendant admits, that one or more of the enumerated acts applies, without specifying which?

## II.

To reach its conclusion regarding the divisibility of the actus reus component of section 11352(a), the majority relies almost exclusively on the lead opinion in *People v. Patterson*, 778 P.2d 549 (Cal. 1989).[1]    *Patterson*, in

---

[1] Unless otherwise noted, references to *Patterson* or the *Patterson* majority refer to the lead opinion authored and signed only by Justice Kennard.  Three justices concurred in the judgment, noting agreement with maintaining the felony-murder rule by "refus[ing] to accept defendant's invitations (1) to abrogate the doctrine entirely, or (2) to permit consideration of other felonies not involved in the case in determining the inherent dangerousness of the defendant's own offense." 778 P.2d at 558 (Lucas, C.J., concurring in part and dissenting in part). Although the concurrence authored by Chief Justice Lucas did not explicitly sign on to the lead opinion's reasoning on the second point, I

isolation, *could* be read as the majority suggests, by extrapolation based on the use of the term "element." But the precise issue we must decide for purposes of applying the modified categorical approach was, as the majority opinion recognizes, not addressed in *Patterson*. Maj. at 15–16. That question, again, is what Martinez-Lopez *necessarily* admitted in his guilty plea—i.e., what the prosecutor would have been required to prove beyond a reasonable doubt at trial to secure a conviction under Health and Safety Code section 11352(a). *See Mathis*, 136 S. Ct. at 2249.

As *Patterson* does not squarely address the issue before our court today, the majority cannot—and, indeed, does not—say that the "state court decision definitively answer[ed] the question." *Id.* at 2256. Yet, once more, for our present purposes, to apply the modified categorical approach a federal court must be able to say that a state law decision dispositively answers the means-or-elements question. The majority's reliance on *Patterson* is thus improper under *Mathis*. *See id.*

Applying an appropriate *Mathis* analysis, the divisibility of section 11352(a)'s actus reus requirement cannot be definitively determined by looking at other authoritative sources of state law either—most of which point in the opposite direction from *Patterson*—or by taking a "peek" at the conviction documents. I consider first the shortcomings of the state law relied upon by the majority and then proceed

---

am willing to assume, for present purposes, the concurrence's basic agreement with Justice Kennard's reasoning as the premise for its assertion that "other felonies not involved in the case" should not be considered. *Id*. I note, however, that the absence of a true majority opinion in *Patterson* is yet one more reason for certifying the issue I enunciated at the outset, *see supra* Part I.

to review (1) other authoritative sources of California law and (2) the conviction record.

## A.

That *Patterson* does not provide a definitive answer to our question here is evident for three reasons. *First*, the lead opinion in *Patterson* does not engage with the then-existing California case law that did address the pertinent question here—what facts must be proven beyond a reasonable doubt to sustain a conviction under section 11352(a). *Second*, no California appellate court has cited or relied on *Patterson* when examining the issue actually before us. *Third*, the felony-murder rule's "viewed-in-the-abstract" test for "inherently dangerous" felonies is dissimilar, in several fundamental ways, from the elements-only categorical approach the Court has prescribed as the only way to meet "*Taylor*'s demand for certainty." *Mathis*, 136 S. Ct. at 2257 (citation omitted).

## 1.

The majority in *Patterson* did not discuss the essential elements that must be proven to sustain a conviction under California Health and Safety Code section 11352(a) or its predecessors, former sections 11500 and 11501. Although there were several then-existing appellate court holdings relevant to that issue, the lead opinion in *Patterson* did not mention any of them. And although Justice Mosk, dissenting in *Patterson*, did discuss that issue and the cases concerning it at length, the *Patterson* lead opinion did not engage at all with the dissent's presentation in that regard.

For example, the *Patterson* majority made no mention of *People v. Cornejo*, 155 Cal. Rptr. 238 (Ct. App. 1979), which had held that a "jury properly convicted" the

defendant of a "violation of Health and Safety Code section 11352, sale of heroin," even though the defendant had made no sale but instead gave away a small sample. *Id.* at 240, 250. Nor did *Patterson* discuss *People v. Holquin*, 40 Cal. Rptr. 364 (Ct. App. 1964), *disapproved of on other grounds by People v. Daniels*, 537 P.2d 1232, 1235–36 (Cal. 1975). *Holquin* examined the legislative history and statutory language of section 11352(a)'s immediate predecessor, section 11501, and held that it

> was enacted to prevent traffic in narcotics and to prevent a narcotic from getting into the hands of those having no right to possess it. To that end the section makes it a criminal offense to effect an illegal change of possession of a narcotic, *regardless of the means used to accomplish the transfer*. . . .
>
> The language of *the statute makes no distinction among the various means for change of possession*; the crime is the same whether the transfer of a narcotic is accomplished by selling, furnishing, administering, or giving it away.

*Id.* at 402 (emphasis added). The *Patterson* majority similarly left out any mention of *People v. Pierre*, 1 Cal. Rptr. 223 (Ct. App. 1959), which had held it was "[i]n no respect . . . improper procedure" for the charging document, jury instructions, and verdict all to have stated the offense under section 11500 as selling, furnishing, or giving away a named narcotic, as the specification of the act (selling, furnishing, or giving away) was not necessary. *Id.* at 226.

Based on a review of these pre-*Patterson* cases, Justice Mosk concluded in his partial dissent in *Patterson* that the actus reus component of section 11352(a) lists alternative means, not elements.  778 P.2d at 566.  Far from "expressly reject[ing]" that contention, as the majority here maintains, see Maj. Op. 16, the *Patterson* majority is entirely silent on the specific question for which we now require an answer— whether a particular actus reus variant in section 11352(a) must be proven to a jury or admitted by the defendant.

The majority steps in to offer a voice where *Patterson* was mute, answering the question left unanswered by *Patterson*.  *Patterson* overruled *Cornejo* and *Pierre*, the majority proclaims, to the extent those two cases conflict with *Patterson*'s holding, with regard to the issue before us—an issue, again, not directly involved in *Patterson*.  Maj. Op. 17.  California courts do not agree with that statement, unless "the extent that [the older cases] conflict" with *Patterson* is trifling.  For instance, in *People v. Haider*, 40 Cal. Rptr. 2d 369 (Ct. App. 1995), the California Court of Appeal cited *Cornejo* to affirm the defendant's one-count conviction for "selling or giving away" cocaine in violation of section 11352(a).  "Although [the defendant] had only two dollars on his person when arrested," the Court of Appeal held there was "substantial evidence that [Haider] sold or gave away cocaine."  *Id.* at 374.  *See also* cases cited *infra* Section II.A.2.

As to the post-*Patterson* cases that parallel *Cornejo*, *Holquin*, and *Pierre* with regard to the question that *is* critical to divisibility, the majority announces that they are "erroneous," as in conflict with *Patterson*.  Maj. Op. 17.  The majority, in short, reads into *Patterson* a ruling that is not there and then reconciles its conclusion with conflicting California cases by pronouncing them bad law.  Far from

pointing to a definitive answer given by an authoritative source of state law, the majority decides for itself what California law is on the critical question. That activist approach to identifying the essential elements under a state statute is not sanctioned by *Mathis* or any other pertinent opinion.

## 2.

The majority does more than overstep the bounds of a *Mathis* analysis; it quite probably comes to the wrong conclusion concerning whether California courts regard *Patterson* as deciding the specific issue we face. Not a single California appellate court has cited *Patterson*—let alone concluded it was dispositive—when considering whether a particular actus reus from section 11352(a)'s enumerated list must be charged and proven.[2]

---

[2] Of the 95 California Supreme Court and Courts of Appeal cases citing *Patterson*, all but four do so to discuss the proper application of the second degree felony-murder or implied malice doctrines. None of the four exceptions concern section 11352 or similar statutes. *See In re Christian S.*, 872 P.2d 574, 585 (Cal. 1994) (Mosk, J., concurring) (citing *Patterson* as part of a wider discussion about the "unnecessary complications in California homicide law"); *People v. Sargent*, 70 Cal. Rptr. 2d 203, 205, 214 (Ct. App. 1997) (Puglia, J., dissenting) (referencing *Patterson* for proposition that "different standards of culpability apply depending on the context in which the proscribed conduct takes place," in a case relating to *mens rea* requirements under a felony child abuse statute that includes multiple "branches . . . of prohibited conduct," each marked by bracketed numbers), *rev'd*, 970 P.2d 409 (Cal. 1999); *People v. McGee*, 2005 WL 859411, at *13 (Cal. Ct. App. Apr. 15, 2005) (unpublished) (same, for general proposition that "the Legislature has broad power to define crimes," such as by amending substantive law to remove an element of an offense); *In re Andrew R.*, 2002 WL 31529056, at *4 (Cal. Ct. App. Nov. 13, 2002) (unpublished)

The California Supreme Court, for example, made no mention of *Patterson* when it decided that reversal was not required where evidence was sufficient to support a conviction for "selling or transporting cocaine" in violation of section 11352 under only one of the two "theories" presented by the prosecution. *See People v. Guiton*, 847 P.2d 45, 54 (Cal. 1993). Nor was *Patterson* referenced in *People v. Lynch*, 2006 WL 2988461, at *2 (Cal. Ct. App. Oct. 20, 2006) (unpublished), which held that "selling or furnishing cocaine are merely two different ways or methods by which [the defendant] might have committed the particular crime."[3]    Similarly, there is no discussion of *Patterson* in *In re W.J.*, 2003 WL 1880159, at *1 (Cal. Ct. App. Apr. 16, 2003) (unpublished). There, the Court of Appeal affirmed a minor's commitment order for "sale or transportation" of cocaine base in violation of section 11352(a).    The court also rejected the minor's contention that possession for sale of cocaine base was necessarily included in the charged section 11352(a) offense, because the language of the charge tracked section 11352(a)'s statutory definition and that section "may

---

(same, for its discussion of factors elevating offense of false imprisonment to felony).

[3] "[W]e may consider unpublished state decisions, even though such opinions have no precedential value." *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003). In this case, where actual charging and conviction practices are pertinent, unpublished cases are relevant as indicators of commonly accepted state court practices.

still be violated by one who transports narcotics without possession of them."[4]  *Id*. at *2.

Once again, it is presumptuous for a federal court to deem these state court decisions incorrect as to state law.  I would adopt a reading that, instead of blithely declaring the post-*Patterson* state decisions on the directly pertinent issue mistaken, reflects the comity due state courts when faced with state law questions.  Doing so, I would conclude that the post-*Patterson* decisions indicate, at a minimum, that, on the question the Court requires us to answer here—i.e., whether a particular actus reus must be proven beyond a reasonable doubt—*Patterson* is not dispositive.  And I would also conclude that the California Supreme Court, if asked directly about the question we face, might well decide that the actus reus factors listed in section 11352(a) are interchangeable means of committing a single offense, so that no one of them need be found by a jury or admitted in a guilty plea.

### 3.

It should be enough that California courts do not see *Patterson* as relevant, let alone controlling, precedent regarding the charging and conviction issues we must

---

[4] Additionally, many other state court decisions on other issues note, without any concern, convictions for "transportation or sale" of a controlled substance in violation of section 11352(a).  *See, e.g.*, *People v. Keith*, 185 Cal. Rptr. 3d 768, 769 (Ct. App. 2015); *People v. Valencia*, 172 Cal. Rptr. 3d 1, 2 (Ct. App. 2014); *People v. Fielder*, 8 Cal. Rptr. 3d 247, 250 (Ct. App. 2004); *People v. Superior Court*, 7 Cal. Rptr. 3d 74, 76 (Ct. App. 2003); *People v. Munoz*, 104 Cal. Rptr. 2d 470, 471 (Ct. App. 2001); *People v. Navarez*, 215 Cal. Rptr. 519, 528 (Ct. App. 1985); *see also People v. Martinez*, 2017 WL 999246 at *4 (Cal. Ct. App. March 15, 2017) (unpublished); *People v. Keeney*, 2016 WL 1089392 at *1–2 (Cal. Ct. App. March 21, 2016) (unpublished).

decide.   I note in addition that it is unsurprising that
*Patterson* has not been relied upon as authoritatively stating
California law on the question here at issue, as there are
bases for deciding the issue before the court in *Patterson* and
the issue in this case differently.

For one thing, when addressing the *Patterson* issue—i.e.,
the proper application of the felony murder doctrine—
California courts have used "means" and "elements"
interchangeably in defining and applying the "viewed-in-
the-abstract" approach to delineating "inherently dangerous"
crimes.  In *People v. Henderson*, 560 P.2d 1180 (Cal. 1977),
*overruled on other grounds by People v. Flood*, 957 P.2d
869 (Cal. 1998), for instance, the California Supreme Court
examined the four factors that could elevate false
imprisonment to a felony (namely, violence, menace, fraud,
or deceit) and concluded that "the felony offense viewed as
a whole in the abstract is not inherently dangerous to human
life."   *Id.* at 1184.   "While the *elements* of violence or
menace by which false imprisonment is elevated to a felony
may involve danger to human life," *Henderson* held, "one
who commits felony false imprisonment by *means* of fraud
or deceit presents no danger significantly greater than one
who commits misdemeanor false imprisonment."   *Id.*
(emphasis added).   That cross-usage indicates that the
distinction between means and elements is not at the
forefront in the "inherently dangerous felony" context.  But
it is when deciding what must be proven to a unanimous jury
or admitted by the defendant, the question here.

Moreover, although the principles underlying both
*Mathis* and *Patterson* reflect concern about limiting certain
collateral effects, the very different contexts implicate not
the same feared impacts but different ones.  Notably, not one
of the important grounds underpinning the Court's

categorical approach is provided by the California Supreme Court as a reason for the "viewed-in-the-abstract" test deployed in California's second degree felony-murder cases. *See Descamps*, 133 S. Ct. at 2287–89.

First, the "inherently dangerous felony" issue in *Patterson* and similar cases, however decided, does not implicate the Sixth Amendment's right to trial by jury. Rather, in the felony-murder context, courts are concerned about fact-specific circumstances that might "poison the well" when a judge considers as a legal question whether a defendant is exposed to a grave additional charge and conviction, murder.   In that context, the "viewed-in-the-abstract" analysis

> is compelled because there is a killing in every case where the rule might potentially be applied.  If in such circumstances a court were to examine the particular facts of the case prior to establishing whether the underlying felony is inherently dangerous, the court might well be led to conclude the rule applicable despite any unfairness which might redound to so broad an application: the existence of the dead victim might appear to lead inexorably to the conclusion that the underlying felony is exceptionally hazardous.

*Patterson*, 778 P.2d at 554 (quoting *People v. Burroughs*, 678 P.2d 894, 897–98) (internal quotation mark omitted), *overruled on another ground by People v. Blakeley*, 999 P.2d 675, 679 (Cal. 2000).

Additionally, none of the practical pitfalls associated with tracking down, reviewing, and working from old court records, often from another jurisdiction, present themselves

in the felony-murder context. Instead, in cases similar to *Patterson*, any collateral consequences generally arise in the same criminal proceeding. Thus, issues that may arise if the dangerousness of an underlying felony is determined erroneously can generally be corrected on direct appeal or remand. In *Patterson*, for instance, the court held that if the trial court concluded on remand that the felony Patterson committed was indeed inherently dangerous, the "defendant must be allowed to withdraw his guilty plea to the charges of violating Health and Safety Code section 11352, with credit for any interim time served." 778 P.2d at 557. In the present context, in contrast, any doubts we have about what was decided in the earlier case cannot be tested by referring the issue back to the original trial (or appellate) court.

Relatedly, and perhaps most significantly, in the context of the felony murder doctrine's "inherently dangerous felony" rule, no California statute requires that the courts look only to convictions, as opposed to the facts underlying the offenses committed. *Cf. Mathis*, 136 S. Ct. at 2252 (comparing sentencing statutes that refer to "an offense . . . committed," and those that refer to convictions and thereby require sentencing courts to "focus[] on only 'the elements of the statute of conviction'") (emendation in original) (citations omitted). Presumably because there is no limitation to a "conviction," once a California court decides that a given statute states separate felonies for the purposes of the felony-murder rule, it may look to the evidence or factual theories presented in a case to determine the variant or type of felonious conduct at issue. And, in practice, when drug statutes like section 11352(a) are at issue, application of the special felony-murder doctrine rules often requires a look to the facts of a case to determine whether or not the offense committed was one of the "inherently dangerous" ones enumerated in the statute. Charging documents and

abstracts of judgment often do not specify any particular act. *See, e.g.*, the cases cited *supra* note 4.

In *People v. Taylor*, 8 Cal. Rptr. 2d 439 (1992), for example, a California Court of Appeal examined whether furnishing or selling PCP was inherently dangerous under the new standards outlined in *Patterson*.  The defendant had been charged with and convicted of "seven counts of sale, furnishing, or transportation of PCP," in violation of a statute that, much like section 11352(a), proscribed the "importation, transportation, furnishing, administering, sale and giving away of" a controlled substance. *Id.* at 441–42 & n.2; *see also* Cal. Health & Safety Code § 11379.5(a).  So why did the Court of Appeal decide that the relevant inquiry for the "inherently dangerous felony" test involved only the "selling or furnishing" of PCP, not its "transportation"? *See id.* at 442–43.  Because the California courts could, and did, look to the facts of the case, concluding that "[a]lthough the statute [of conviction also] encompasses importation, transportation, . . . administering, . . . and giving away of PCP . . . the evidence [in the case] supported a sale as well as furnishing." *Id.* at 442 n.2.  As the evidence implicated the selling or furnishing aspects of the offense, the court did not concern itself with the broader statutory crime of conviction.  But, as—once again—the Supreme Court has stressed repeatedly, most recently in *Descamps* and *Mathis*, in applying the categorical approach, federal courts are "barred from making," as the California court did in *Taylor*, any fact-based determination about "what the jury in a prior trial must have accepted as the theory of the crime." *Mathis*, 136 S. Ct. at 2252 (quoting *Descamps*, 133 S. Ct. at 2288).

* * *

In sum, the *Patterson* majority made no attempt to align its holding with existing California case law directly

addressing the requisites of section 11352(a) for charging, jury instruction, and conviction purposes, i.e., the pertinent issue here. And no California appellate court has ever cited *Patterson* in any analysis of section 11352(a)'s elements, or those of similar statutes. As California courts have not taken that step, we should not hold that *Patterson*'s felony-murder holding must be extended to the entirely distinct issue we have before us.[5]

## B.

Nor does other California case law provide a definitive answer to our question.

Most promising, perhaps, is *People v. Guiton*, 847 P.2d at 46, 51–54. In *Guiton*, the California Supreme Court considered whether a conviction for "selling or transporting cocaine" in violation of section 11352 could be affirmed where the evidence was insufficient to show a "sale," but was sufficient to prove, beyond a reasonable doubt, that the defendant had "transported" the drug. In its analysis, *Guiton* highlighted that the jury had been instructed that unanimity was required as to the criminal "act" the defendant committed.[6] *Id.* at 51.

---

[5] Notably, *Patterson* emphasized that the "anachronistic" and "disfavored" felony-murder rule "deserves no extension beyond its required application." 778 P.2d at 554 (internal quotation marks and citations omitted).

[6] Under California law, "the unanimity instruction is appropriate 'when conviction on a single count could be based on two or more *discrete criminal events*,' but not 'where *multiple theories or acts* may form the basis of a guilty verdict on one discrete criminal event.'" *People*

But *Guiton* did not specify the relevant "act" in that case. 847 P.2d at 51. Instead, *Guiton* discusses transportation and sale as "alternative theories"—not alternative elements—one of which was unsupported by the evidence.[7] The court then held that the sufficient evidence of the "independently valid ground of transporting cocaine" was enough to assume the jury's verdict valid. *Id.*

*Guiton may* indicate that the actus reus component of section 11352(a) defines different acts requiring juror unanimity. But *Guiton*'s discussion may also indicate that, if both "theories" had been supported and Guiton had been charged and convicted in two different counts, the convictions would not survive because "dual convictions for the same offense based on alternate legal theories would necessarily be prohibited." *People v. Vidana*, 377 P.3d 805, 817 (Cal. 2016); *see also People v. Roberts*, 254 P.2d 501 (Cal. 1953), discussed immediately below. *Guiton* thus leaves the key question here unanswered.

Other California cases are in greater tension with the majority's conclusion. Most notably, the California Supreme Court recently breathed new life into *People v. Roberts*, which held that possession, sale, and transportation of a controlled substance charged under a single statute constituted only one criminal offense when completed in the same course of conduct. *See People v. Correa*, 278 P.3d

---

*v. Russo*, 25 P.3d 641, 647 (Cal. 2001) (quoting *People v. Perez*, 26 Cal. Rptr. 2d 691, 696 (Ct. App. 1993)) (emphasis added).

[7] In considering the harmlessness of instructing the jury on an unsupported ground, *Guiton* mentions that the prosecutor at trial noted to the jury that they had to agree on at least one of the theories presented. 847 P.2d at 54 n.2. *Guiton* did not, however, affirmatively subscribe to that view.

809, 815 (Cal. 2012). As *Correa* observed, the defendant in *Roberts* had been convicted on three counts of "violating [section 11352(a)'s predecessor] in three different ways on the same occasion by illegally transporting, selling, and possessing heroin." *Id. Roberts* held that the three acts were improperly "charged and adjudged as separate crimes," and reversed the conviction as to two of the three counts. 254 P.2d at 505. Because the "acts constitut[ed] *but one offense* when committed by the same person at the same time," the three counts "charge[d] *but one crime*" and could support only one conviction. *Id.* (quoting *People v. Clemett*, 280 P. 681 (Cal. 1929)) (emphasis added).

*Correa*'s clarification was necessary because *Roberts*'s holding had been entwined for some years in the case law interpreting California Penal Code § 654, which concerns the propriety of multiple punishments.[8] *See Correa*, 278 P.3d at 813–14; *see also Neal v. California*, 357 P.2d 839, 843 n.1 (Cal. 1960). As *Correa* explained, *Roberts* "involved multiple *convictions* that were held to be improper

---

[8] California Penal Code section 654 bars multiple *punishments* when a single course of conduct is criminalized under various sections of California's criminal codes. Its counterpart regarding multiple charges and *convictions*, Penal Code section 954, allows the state to charge a defendant in separate counts for "different offenses connected together in their commission," "different offenses of the same class of crimes," or "different statements of the same offense," and to convict a defendant of any number of the offenses charged. *Vidana*, 377 P.3d at 816; Cal. Pen. Code § 954. Because section 954 had been interpreted as broadly permitting multiple convictions, California courts typically applied section 654 to bar multiple punishments without separate analysis regarding whether multiple convictions may stand when an individual had been convicted on multiple counts for a single act or course of conduct. *See id.* at 808, 817 (citing *People v. Gonzalez*, 335 P.3d 1083 (Cal. 2014); *People v. Ortega*, 968 P.2d 48 (Cal. 1998); *People v. Pearson*, 721 P.2d 595 (Cal. 1986)).

without any reliance on section 654," *Correa*, 278 P.3d at 813 (emphasis in original), thereby reaffirming the *Roberts* holding as relevant—indeed, arguably controlling—here.

More recently, in *Vidana*, the California Supreme Court emphasized that, although multiple charges for the "same offense" are generally permissible, "dual *convictions* for the same offense based on alternate legal theories" are not. 377 P.3d at 816–17 (emphasis added). *Roberts* had held that the various actions enumerated in section 11352(a)'s predecessor statute together stated "but one offense," so that "when committed by the same person at the same time," a complaint that states two or more of the actus reus alternatives "charge[s] but one crime." 254 P.2d at 505 (citation omitted). In distinguishing between multiple convictions based on charges of different offenses and those based on multiple charges that state a single offense, *Roberts* is fully consistent with *Vidana*, again confirming its continued vitality.

In my view, the California Supreme Court's recent revitalization of *Roberts* comes much closer than *Patterson* to definitively answering the question we face here. Because the state court decisions can be viewed as pointing in more than one direction (although much more strongly in one than in the other), all that is clear, in my view, is that California courts have not definitively determined that one of the enumerated acts in section 11352(a) must be found unanimously by a jury or admitted by the defendant.

## C.

*Mathis* further instructs that a "statute on its face may resolve the [means/elements] issue" by defining different punishments for the statutory alternatives or by "identify[ing] which things must be charged (and so are

elements) and which need not be (and so are means)." 136 S. Ct. at 2256. Section 11352(a) on its face provides no clear answer regarding the divisibility of the actus reus component. It gives no notice of what must be charged or proven to sustain a conviction and does not define different levels of punishment for different types of acts. *See* Cal. Health & Safety Code § 11352(a).

## D.

Finally, where, as here, there is no definitive answer from authoritative sources of state law, *Mathis* instructs reviewing courts to "peek" at the conviction record as an indication of whether the statute lists separate elements or merely separate means. 136 S. Ct. at 2257 (citation omitted). As *Mathis* explained, if the indictment and jury instructions both refer to a disjunctive list of factors or use a vague "umbrella term" (e.g., "premises"), there is "as clear an indication as any that each alternative is only a possible means of commission."[9] *Id*. at 2257. On the other hand, if the indictment and jury instructions "referenc[e] one alternative term to the exclusion of all others," that "could indicate" that the item is part of list of separate elements. *Id.* Notably, the Court highlights that "such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy '*Taylor*'s demand for certainty' when determining whether a defendant was convicted of a generic offense." *Id.* (citation omitted).

---

[9] When a guilty plea is entered in lieu of trial, there are no correlative jury instructions, so a plea agreement or transcript of the plea colloquy may be referenced. *United States v. Marcia-Acosta*, 780 F.3d 1244, 1250 (9th Cir. 2015) (citing *Shepard*, 544 U.S. at 26).

Turning then to the record documents, I conclude that they strongly indicate that the actus reus factors are means of committing a section 11352(a) offense, not separate elements. Martinez-Lopez's felony complaint charged him with "the crime of SALE/ TRANSPORTATION/ OFFER TO SELL CONTROLLED SUBSTANCE, in violation of HEALTH AND SAFETY CODE SECTION 11352(a)." The complaint went on to allege that Martinez-Lopez "did unlawfully transport, import into the State of California, sell, furnish, administer, and give away, and offer to transport, import into the State of California, sell, furnish, administer, and give away, and attempt to import into the State of California and transport a controlled substance." The abstract of judgment noted that Martinez-Lopez was sentenced to a four-year term of imprisonment for "SALE/TRANS. COCAINE BASE," and to an additional three-year term for an enhancement based on a prior offense. In Martinez-Lopez's plea colloquy, the prosecutor stated the factual basis for the plea as "on or about December 31, 1997, you did sell cocaine base – .42 grams of cocaine base." Martinez-Lopez affirmed that factual basis.[10]

Although the plea colloquy transcript specifies the factual basis for conviction as "selling," the conviction documents do not. Under the categorical approach, the key issue is, once again, the elements of the crime of conviction. An admission to a specific factual basis for the conviction says little about the scope of the statutory offense of conviction, as the defendant often admits to the means by which he committed a broad element of the offense. *See supra* Part I, pp. 24–24 (discussing why factual admissions

---

[10] At the plea hearing, the judge initially stated the charged count—erroneously—as "sales involving cocaine;" the prosecutor similarly stated the charge as "sale of a controlled substance, in this case cocaine."

cannot be independently controlling under the categorical approach if the offense has a broad element that can be committed in various ways).  A sentencing court cannot tell whether the admitted factual basis is premised on an admission of a specific element of the crime—sale—or, more likely, simply provides a more detailed description of the conduct or means by which the broader crime charged and reflected in the abstract of judgment was committed.

The "peek" at the record in this case thus leaves me where the other *Mathis* clues to resolving the means/element question did—with the strong likelihood that the various acts described in section 11352(a) are interchangeable means of committing the offense.

## III.

*Mathis* indicated that, in most cases, federal sentencing courts should readily be able to answer the question we face today by looking only to authoritative sources of state law or, if necessary, peeking at the record of conviction.  136 S. Ct. at 2256–57.  Indeterminacy after both examinations, it posited, would be "more the exception than the rule."  *Id.* at 2257.

As I understand the line of cases culminating in *Mathis*, the certainty requirement cuts in a specific direction: Where there is indeterminacy after all the modes of inquiry prescribed in *Mathis* are exhausted, a federal court must treat the state statute as indivisible with regard to the contested generic element, and so may not apply the modified categorical approach.  *See id.* (explaining that where the prescribed sources do not "speak plainly, . . . a sentencing judge will not be able to satisfy '*Taylor*'s demand for certainty' when determining whether a defendant was convicted of a generic offense" (quoting *Shepard*, 544 U.S.

at 21)).  Applying that precept, we could here conclude that because, for reasons I have given, there is no certainty that the actus reus enumeration in section 11352(a) states elements rather than means, we should treat that aspect of the statute as not divisible.  We would then conclude that we cannot apply the modified categorical approach.

In this particular instance, however, I believe our best route is to ask the California Supreme Court to provide a definitive answer to the precise question presented in this case.  Certifying means-or-elements questions to state courts ordinarily should not be necessary, for the reasons indicated in *Mathis*.  Here, the circumstances are not ordinary, for three related reasons.

First, these California drug convictions arise exceedingly frequently in federal cases applying the categorical approach.

Second, our question, although of exceptional importance in federal criminal (and immigration) cases, is not, at the end of the day, a question of federal law.  Instead, despite the majority's eagerness to conclude otherwise, we are faced with questions of unresolved state law.  Whether section 11352(a)'s actus reus requirement is divisible under *Mathis* involves purely state law questions on charging and jury practices.  *See* 136 S. Ct. at 2256.  "Through certification of . . . unsettled questions of state law for authoritative answers by a State's highest court, a federal court may save 'time, energy, and resources and hel[p] build a cooperative judicial federalism.'"  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997) (quoting *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974)).  Here, in particular, the "more cautious approach [of certification is] in order," *id.*, because, "truth be told, [I] find the state

decisions on [the question] contradictory and confusing," *Descamps*, 133 S. Ct. at 2291.

Third, whichever way we decide the undecided state law questions, there will be substantial practical problems for state courts.  As such convictions under section 11352(a) and similar drug statutes so often occur in California, the answer to the question whether each factor listed in the statute's actus reus component must be proven to a jury or specifically admitted in a guilty plea is of great consequence in the state court system.  If we accept the majority's answer, then prosecutors, defendants, and courts in California would be left with some state court cases saying that defendants *can* be charged and convicted for only one offense for all the enumerated conduct, and an en banc panel of this court saying that those cases are erroneous and that each enumerated act is a separate element of a separate offense. We would then invite an influx of habeas appeals relating, for example, to duplicitous charges, convictions sustained despite failure to ensure jury unanimity, or ambiguous guilty pleas.  Alternatively, if California courts *did* follow the majority's conclusion here, the state will have to change widespread charging and trial practices.

If we instead followed my suggestion that the majority's conclusion is at the very least highly questionable and that section 11352(a) must therefore be treated as indivisible for federal purposes, confusion could also follow in this oft-litigated area.  As our conclusion would only be that the California law as to the unit of charge and conviction is unclear, we might encourage widespread challenges to California convictions in which the specific act committed is not unanimously found or admitted.

I would therefore certify to the California Supreme Court the question enunciated at the outset of this opinion. *See* Cal. R. Ct. 8.548.

## IV.

I concur, with a caveat, in the majority's decision on the controlled substances requirement.

The cases cited by the majority as to that aspect of section 11352(a)—*In re Adams*, 536 P.2d 473 (Cal. 1975), *People v. Chung*, 187 Cal. Rptr. 3d 873 (Ct. App. 2015), and *People v. Monarrez*, 78 Cal. Rptr. 2d 247 (Ct. App. 1998)— did not expressly address the validity of multiple convictions under California Health and Safety Code § 11352 for single acts or courses of conduct involving different controlled substances. But, as the majority concludes, in addressing whether multiple punishments should be upheld, the courts appear to have necessarily assumed that the multiple convictions were proper under California law. I also observe that the charging and conviction documents in California appear routinely to specify a particular drug, the opposite of the practice with regard to the enumerated acts. *See, e.g.*, the cases cited *supra* note 4.

*People v. Martin*, 86 Cal. Rptr. 3d 858, 861 (Ct. App. 2008), does not support a contrary conclusion. In *Martin*, the defendant was charged with possession of a controlled substance, cocaine base, in violation of section 11350(a). The jury received written jury instructions that specified "cocaine," instead of "cocaine base," as the controlled substance at issue. The oral instructions, on the other hand, correctly noted "cocaine base." In holding that any instructional error was harmless, the Court of Appeal highlighted that "[t]he jury was correctly instructed on the

elements of the crime of possession of a controlled substance."

I do, however, have one caution regarding the majority's controlled substance holding: There have been changes in related California legal principles in recent years that may have undermined the assumptions in *Adams* as to whether a specific controlled substance is an element that must be proven beyond a reasonable doubt to a jury or admitted by the defendant. For many years, including when *Adams* was decided, California courts understood Penal Code section 954 to be broadly permissive of multiple convictions wherever multiple charges were proper, including when charges stated "different statements of the same offense." *See Pearson*, 721 P.2d at 596; *People v. Tideman*, 370 P.2d 1007, 1011 (Cal. 1962). On that understanding, the assumption in *Adams* that there could be separate convictions under section 11352 for each particular controlled substance was appropriate.

The California Supreme Court has recently clarified, however, that Penal Code section 954 is not as broad as believed at the time of *Adams*. In particular, multiple convictions cannot stand when charges simply state "different statements of the same offense," as opposed to "different offenses of the same class of crimes." *Vidana*, 377 P.3d at 816; *see also* Cal. Pen. Code § 954. No California court has yet addressed whether *Vidana* changes the multiple convictions analysis in cases involving drugs of various types. Until California courts address that issue, I see no reason to question the weight of California authority, as well as common practice, which indicate that a specific controlled substance generally must be named—and usually is—in both the criminal charge and the jury instructions.

I therefore concur in the majority's decision as to the divisibility of the controlled substance component. If, after *Vidana*, California courts revise the treatment of multiple charges and convictions based on one criminal activity involving multiple types of controlled substances, we might have to revisit this issue.

\* \* \* \* \*

I respectfully dissent from the majority's decision with respect to Part II.B. and, to the extent it relies on the conclusions of Part II.B, Part II.C.

I concur in Part II.A. of the decision.

---

BYBEE, Circuit Judge, concurring in part and dissenting in part, but frustrated with the whole endeavor:

In *Mathis*, the Supreme Court promised that "[the] threshold inquiry—elements or means?—is easy in this case, as it will be in many others." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016); *see also Descamps v. United States*, 133 S. Ct. 2276, 2285 n.2 (2013) ("[I]f the dissent's real point is that distinguishing between 'alternative elements' and 'alternative means' is difficult, we can see no real-world reason to worry."). Six years ago I wrote: "In the twenty years since *Taylor* [*v. United States*, 495 U.S. 575 (1990)], we have struggled to understand the contours of the Supreme Court's framework. Indeed, over the past decade, perhaps no other area of the law has demanded more of our resources." *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 917 (9th Cir. 2011) (en banc) (citing nine prior *en banc* decisions of our court addressing the

categorical/modified categorical framework), *overruled by Descamps*, 133 S. Ct. 2276.

The case before us is not easy, and does not bode well for the Supreme Court's conclusion that "indeterminacy should prove more the exception than the rule." *Mathis*, 136 S. Ct. at 2257. In my view, California Health and Safety Code § 11352(a) functions as a new form of a "wobbler" statute in regards to the actus reus: sometimes the acts listed are treated as elements, as outlined in Judge Tallman's majority opinion, and other times they are treated as means, as explained in Judge Berzon's partial dissent. I cannot say conclusively whether § 11352 identifies elements or means—which is not surprising, since the "elements-means" distinction is largely a recent creation by the Court. Having failed to satisfy the "demand for certainty" required to conclude that this statute identifies elements, *Mathis*, 136 S. Ct. at 2257 (quoting *Shepard v. United States*, 544 U.S. 13, 21 (2005)), the sentence enhancement cannot stand.

I respectfully dissent from the actus reus portion of the majority opinion.

---

REINHARDT, Circuit Judge, with whom Chief Judge THOMAS joins, dissenting:

I join Judge Berzon's opinion except as to Part IV. Instead, I would certify to the California Supreme Court the question of the divisibility of the controlled substance provision of Section 11352(a) as well as the divisibility of the actus reus provision of that same subsection. In other words, not only would I ask whether the specific acts are elements or means, but I would also ask whether the prohibited controlled substances are elements or means.

Where the divisibility of the two principal aspects of a subsection of a statute are unclear – here, the proscribed acts and the proscribed substances – it seems evident to me that they should be certified together to the state supreme court to clarify both issues. The divisibility of both acts and substances is unclear in this case. Judge Berzon explains convincingly why the acts provision is unclear but hesitates with respect to the proscribed substances question. With respect to the latter question, she notes that the California Supreme Court's recent decision in *People v. Vidana*, 377 P.3d 805 (Cal. 2016), may alter or overrule the multiple convictions analysis advanced by the majority with respect to *In re Adams*. That California's law may have recently been modified is sufficient in itself to prevent this court from concluding that the statute *is* divisible with the "certainty" demanded by *Mathis*. *Mathis v. United States*, 136 S. Ct. 2243, 2257 (2016) (citation omitted).

By certifying the controlled substances question now, we could enable federal courts to properly determine the applicability of California's drug statutes in immigration and sentencing guidelines cases. By failing to certify one of the two questions, we may instead ensure, as Judge Berzon suggests, that this court will soon again have to revisit the issue, after the full effects of *Vidana* are examined by the California courts. Rather than again undergo the torturous process in which we are now engaged, and again risk announcing by a 6–5 vote that California's law provides a clear answer to the divisibility question, we should now certify to the California Supreme Court both questions: whether controlled substances are elements or means in Section 11352(a) along with the question whether actus rei are elements or means, and thereby obtain an answer that gives us the certainty required by *Mathis*.

Even without *Vidana*, the answer to the question whether the controlled substances listed in Section 11352 are elements or means is far from clear. California's appellate courts have not read *In re Adams* as deciding the issue in favor of divisibility. Instead, the courts of appeal have repeatedly upheld convictions where the identity of the controlled substance supporting the conviction was incorrect or unproven. *See, e.g.*, *People v. Nugent*, 2010 WL 4967932, at *3 (Cal. Ct. App. 2010) (upholding conviction where "appellant had offered to sell either cocaine or heroin"); *People v. Bonham*, 2006 WL 400366, at *9 (Cal. Ct. App. 2006) (upholding conviction where trial court wrote "methamphetamine or amphetamine" into model jury instructions as the controlled substance at issue); *People v. Orozco*, 2003 WL 23100024, at *3 (Cal. Ct. App. 2003) (upholding a conviction for heroin although the charge was cocaine); *People v. Pinal*, 2002 WL 180271, at *1 (Cal. Ct. App. 2002) (upholding conviction for possession of a mixture of heroin and cocaine).

We could all assume, as the bare majority apparently does, that the courts of appeal erred in these cases because the California Supreme Court definitively held over forty years ago that the controlled substances were elements rather than means. However, such an assumption does not demonstrate "the comity due state courts when faced with state law questions." Rather, the appropriate conclusion is that, like *Patterson* in the context of the actus reus question, *In re Adams* did not definitively answer the question of element versus means with regard to the controlled substances question. Given this uncertainty, the additional uncertainty recently created by *Vidana* is dispositive. In the interest of comity and judicial economy, I would certify both questions regarding Section 11352(a) to the California Supreme Court.

I therefore dissent from the majority opinion in its entirety.